UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE NEVELL NEYLAND,
MINNIE LEE MILTON, BARBARA
JEAN MILTON, STACEY MATHEWS,
and ANTHONY DARRYL MILTON

      Plaintiffs,

v.

JOSEPH MOLINARO, DEVON ZELLNER,
MICHAEL DAILEY, and CARL MACK

      Defendants.
_____/

Case No. 03-73090

Hon. John Corbett O'Meara

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT IN PART**

Plaintiffs brought suit against four Detroit police officers, alleging violations of their constitutional rights pursuant to 42 U.S.C. § 1983. On March 1, 2005, Defendants moved for summary judgment against three of the plaintiffs. On April 14, 2005, Plaintiffs filed a response. The court heard oral argument on April 22, 2005. For the following reasons, Defendants' motion for partial summary judgment is granted in part and denied in part.

**Background**

Ronnie Neyland and Barbara Milton are the unmarried parents of a son. They share child rearing responsibilities. On May 20, 2000, Neyland visited Barbara Milton to discuss Neyland's desire to take their son to Cleveland to visit relatives. At the time, Barbara was living with her mother, Minnie Milton. Barbara did not want Neyland to take their son to Cleveland and an argument ensued. A frustrated Neyland told Barbara that she probably wouldn't care if someone wanted to kill themself. Neyland left the house and sat in his car, trying to regain his composure.

Barbara saw him writing something in the car and became nervous that he might attempt suicide.

She called 911 to report her fear that Neyland might commit suicide. Two police officers, Molinaro and Zellner, arrived shortly in response to her call.

At this point the facts become blurry. Witnesses remember the incident differently. Molinaro and Zellner believed they were dealing with a mentally unstable person. They did not know if he possessed a weapon. Neyland was not actually contemplating suicide and did not know Barbara had called 911. The officers asked to search Neyland's car, and Neyland consented to this search. Eventually, a physical altercation ensued between Neyland and the officers. The officers apparently attempted to pat down Neyland for weapons. Neyland claims that an officer shoved him without provocation. The officers claim that Neyland was the aggressor who responded violently when they attempted to pat him down. Both sides agree that Neyland pushed Officer Zellner to the ground. A verbal argument ensued. Neyland was angry with the police officers because he felt he had committed no crime and was being harassed by the police. The officers claim they told him he was under arrest at this point, though Neyland claims he was never told this. The officers attempted to physically subdue him. Neyland claims Zellner sprayed him with pepper spray. Neyland resisted, broke free of the officers' grasp, and retreated inside the Milton home.

When Neyland retreated to the house, the officers followed him. The officers claim they were yelling at Neyland to stop and that he was under arrest. When the officers reached the porch, they were met by Minnie Milton, who had come out of the house and was standing on the porch. The officers claim Minnie was blocking their entry to the house. The officers stopped

on the porch for about a minute, yelling at Minnie to get out of their way, and yelling at Neyland who was still visible behind the door. Minnie claims she was standing to the side of the door and never told them not to enter the house. Minnie told the officers they weren't handling this situation properly and that they should call someone else. Barbara Milton was also on the porch and told the police officers not to go into the home. The officers told the Miltons they were interfering with a police investigation. Neyland, who was just inside the doorway to the house, was sprayed with pepper spray by Zellner. Minnie's grandson Anthony Milton (Barbara's nephew), was also present on the porch. After the officers were on the porch for about a minute, Anthony Milton physically moved Minnie away from the officers and the doorway. Anthony claims he did this because he feared the officers might strike her.

Zellner pushed in the front door's screen and reached inside to unlock the door. The officers entered the Milton home with guns drawn and found Neyland in a bedroom on the first floor. The officers claim Neyland began throwing objects at them, though Neyland claims he never resisted them. Another physical altercation ensued. During the struggle, Neyland was loudly screaming.

Officers Mack and Dailey responded to Molinari and Zellner's calls for back-up. They arrived after Molinaro and Zellner had entered the Milton home. They found Barbara, Anthony, and Minnie Milton on the front porch. Mack and Dailey entered the Milton house to assist with Neyland. Other unnamed officers came to assist as well. Barbara remembers hearing an officer standing in the doorway instruct the Miltons not to move. That officer left the doorway. Minnie does not remember hearing such an instruction. The Miltons heard Neyland's screams and feared that Minnie's grandson, who they believed was upstairs in the house at the time, might be

in danger. After Neyland's screams stopped, all three Miltons entered the home. Some of the officers restrained all three Miltons and handcuffed them. It is not clear which officers actually restrained the Miltons. Minnie Milton alleges that when she was being subdued, she felt a sharp pain in her back which felt like someone punched her.

Barbara and Anthony Milton were handcuffed and forced to lay on the porch. Anthony Milton estimated the time they were restrained was five to ten minutes. Barbara estimated it at ten or fifteen minutes. Barbara alleges that one of the officers pushed her face into the screen door to open it. None of the Miltons sought medical attention for any injuries. After Neyland was in custody and removed from the house, the police uncuffed Barbara and Anthony. The police lieutenant directed the officers to transport Neyland to a mental health facility. He was never charged with a crime.

Molinari arrested Minnie Milton for interfering with a city employee in the course of his duties. She spent a night in jail and was released on bond the next day. Eventually, the charge against Minnie was dismissed because Officer Molinaro did not appear in court. Molinaro claims he was transferred to the narcotics unit shortly after the incident and never received notice of the court date.

## Law and Analysis

The original complaint had four counts. Counts One and Two, state tort claims for assault and battery and false imprisonment, were remanded to state court in an order dated September 3, 2003. Plaintiffs also claim violations of the Fourth, Fifth, and Fourteenth Amendments arising from excessive force (Count 3) and unlawful arrest (Count 4).

I.  Summary Judgment Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Bender v. Southland Corp., 749 F.2d 1205, 1210-11 (6th Cir. 1984).

To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.  As the United States Supreme Court stated in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted).  See Catrett, 477 U.S. at 322-23; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  A nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.  Lucas v. Leaseway Multi Transp. Serv., Inc., 738 F. Supp. 214, 217 (E.D. Mich. 1990), aff'd, 929 F.2d 701 (6th Cir. 1991).  Although the nonmoving party's evidence in opposition to summary judgment need not be of the sort admissible at trial, he must employ proof other than his pleadings and own affidavits to establish the existence of specific triable facts.  Ashbrook v. Block, 917 F.2d 918, 921 (6th Cir. 1990).

II.  Claims Arising under the Fifth Amendment

Plaintiffs cite the Fifth Amendment as one of the sources of authority for their claims of excessive force and unlawful arrest. They assert that the Fifth Amendment claims are based on notions of substantive due process. The United States Supreme Court has held that substantive due process does not extend to claims for false arrest and that such claims are properly brought under the Fourth Amendment. <u>Albright v. Oliver</u>, 510 U.S. 266 (1994). Accordingly, Plaintiffs' claims are properly considered as arising under the Fourth Amendment, which is incorporated to the states by the Fourteenth Amendment. Defendants should be granted summary judgment as to all claims arising under the Fifth Amendment.

### III.  Barbara and Anthony Milton's Claims

Barbara and Anthony Milton have pointed to no evidence that the four named defendants were the officers who actually physically detained them. Both parties agree that other officers were present at the scene. Molinaro and Zellner's depositions suggest that the four named defendants were the officers who physically subdued Neyland in the bedroom. All of the evidence indicates that they were occupied in the bedroom when the Miltons entered the house. Barbara Milton testified that a white male officer grabbed her and took her on the porch and a white female officer handcuffed her. Anthony Milton testified that a male officer grabbed him and handcuffed him, but he couldn't recall if he was white or black.

Defendants claim they can not identify any of the officers by name and have not had the opportunity to see them to identify them by appearance. They were unable to determine the identity of the officers through discovery. Plaintiffs attempt to argue that the four named defendants were somehow vicariously liable for the actions of the unnamed officers. Plaintiffs cite no authority for this proposition, and the court is not persuaded by the argument. Plaintiffs

6

have not met their burden of establishing evidence sufficient to create a genuine issue of material fact regarding the actions of the four named defendants toward Barbara and Anthony Milton.

IV. Minnie Milton's Claims

A. Excessive Force (Count 3)

The plaintiffs have offered no evidence regarding the identify of the officer that detained Minnie and allegedly punched or kneed her in the back. As such, the four named defendants should also be granted summary judgment on her excessive force claim.

b. Probable Cause to Arrest (Count 4)

Officer Molinaro was the officer that handcuffed Minnie Milton, brought her to the station, and charged her with interfering with a city employee in the performance of his duties. Probable cause to arrest exists if the facts and circumstances within an officer's knowledge warrant a reasonable belief that a person has committed, is committing, or is about to commit a crime. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). This includes the violation of a city ordinance. Id. Molinaro arrested Minnie for violation of City of Detroit Ordinance 38-2-2, which makes it unlawful "for any person to knowingly and willfully interfere with or obstruct any city employee in the performance of his duties as a city employee."

Defendants claim that while they were attempting to detain Neyland, Minnie was blocking the doorway and refused to let them enter her house. The Miltons claim she was not blocking the doorway but was standing to the left of the door. Minnie further claims she never said the officers could not enter the home. Minnie told the officers that she did not think their actions were proper, and that they should call someone else. This conflicting testimony creates a genuine issue of material fact as to whether there was probable cause to believe Minnie obstructed the

officers when she was on the porch.

Another issue of material fact exists as to whether the officers' pursuit of Neyland into Milton's home was part of their lawful duties as City employees. Plaintiffs argue that the officers' pursuit of Neyland was not lawful, so she could not be obstructing the legal duties of the officers. The defendants concede that a genuine issue of material fact exists regarding Neyland's constitutional claims. As such, summary judgment is not warranted on the question of Molinaro's probable cause to believe Minnie interfered with the duties of a city employee.

Defendants cite an alternative reason to arrest Minnie. They claim Minnie disregarded an officer's direction not to enter her house while the other officers were inside, and her entry gave them probable cause to arrest her. Defendants cite Barbara's deposition testimony for this directive. Minnie, however, does not remember ever hearing an officer order her not to enter. It is not clear if the directive was made to Barbara alone or to all of the Miltons. Moreover, Officer Molinaro was in the bedroom with Neyland when Minnie reentered the house. Indeed, his deposition indicated that he was not even aware that she entered the house while he was struggling with Neyland. The determination of probable cause based on the knowledge of the officer at the time of the arrest. At the time of the arrest, Molinaro did not know that Minnie violated any directive, if she even did violate a directive. As such, the predicate for Molinaro's arrest was Minnie's initial conduct on the porch, not her subsequent entry into the house.

Defendants argue that even if the arrest was a violation of Minnie's rights, that their conduct should be protected by qualified immunity. The court should first determine if there would a constitutional violation if the plaintiffs were believed. The foregoing analysis establishes that if Minnie's testimony is believed, there was not probable cause to arrest her. The court must

next determine if the violation was a clearly established law that a reasonable officer should know. If a reasonable officer could have believed that Molinaro had probable cause to arrest Minnie for interference, then Molinaro should be granted qualified immunity. See Anderson v. Creighton, 483 U.S. 635 (1987). A genuine issue of material fact remains regarding whether Molinaro had legal authority to arrest Neyland at all. Another genuine issue of material fact exists as to whether Minnie was actually obstructing the officer's pursuit of Neyland. It is clearly established that probable cause is a necessary prerequisite for a lawful arrest. If the testimony of Neyland and Minnie is believed, a reasonable officer would not have believed that probable cause existed to arrest Minnie. On these facts, summary judgment is not warranted regarding Molinaro's claim of qualified immunity.

Plaintiffs have offered no evidence that the other three named defendants were involved in Minnie's arrest. Summary judgment as to Minnie's arrest should be granted for those three defendants.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' March 1, 2005 Motion for Summary Judgment in Part is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment as to all plaintiffs' claims arising under the Fifth Amendment is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion for granted summary judgment as to all of Barbara and Anthony Milton's claims as well as Minnie Milton's claim of excessive force is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment as to Minnie Milton's claim of unlawful arrest against Officers Zellner, Dailey, and Mack is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment as to Minnie Milton's claim of unlawful arrest against Officer Molinaro is **DENIED**.

s/John Corbett O'Meara
John Corbett O'Meara
United States District Judge

Dated: April 29, 2005